# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

CARLA KARLEN, CARLA KARLEN    :
as next friend on behalf of minor children   :
J.K. and D.K.,    :
      plaintiffs    :
   :
      v.    :        3:07-cv-309 (CFD)
   :
WESTPORT BOARD OF EDUCATION,  :
ELLIOTT LANDON, CYNTHIA    :
GILCHRIST, KAYE MAY, LORRAINE  :
DINAPOLI,    :
      defendants    :

## RULING ON MOTIONS TO DISMISS

The plaintiffs, Carla Karlen ("Carla" or "Karlen") and Karlen as next friend on behalf of

her two minor children, J.K. and D.K., allege racial discrimination under Title VI and 42 U.S.C.

§ 1981, First Amendment retaliation and Equal Protection Clause violations pursuant to 42

U.S.C. § 1983, violation of Connecticut's anti-bullying statute, Conn. Gen. Stat. § 10-222d, and

intentional infliction of emotional distress against the defendants Westport Board of Education

(the "Board"), Superintendent of Schools Elliott Landon ("Landon"), former Principal of

Coleytown Elementary School Kaye May ("May"), Special Education Director Cynthia Gilchrist[1]

("Gilchrist"), and Department Chair of Special Education at Staples High School Lorraine

DiNapoli ("DiNapoli").  The plaintiffs are residents of Westport, Connecticut and D.K. and J.K.

attend public schools in the Westport public school system.

---

[1]"Gilchrist" or "Gilchrest."  See Affidavit of Cynthia Gilchrest, Exhibit E to defendants'
motion for summary judgment.

Pending motions include a motion to dismiss by DiNapoli [Dkt. # 68] and a motion to dismiss by the other defendants [Dkt. # 18] for failure to exhaust administrative remedies and failure to state a claim upon which relief may be granted, as well as a motion for summary judgment by defendants Landon, May, Gilchrist, and the Board [Dkt. # 47].  These defendants have also filed a motion to strike portions of the plaintiffs' affidavits and exhibits submitted in response to the motion for summary judgment [Dkt. # 62].  This ruling addresses only the two motions to dismiss, and grants in part those two motions for the following reasons.

I.     **Background**

The relevant allegations in the complaint,[2] which the Court must accept as true in resolving the motions to dismiss, are as follows.  Karlen is African American and her children D.K. and J.K. are bi-racial.  (Gerard Karlen, Carla's husband, is Caucasian.)  D.K. entered Coleytown Elementary School in Fall 1998.  After observing no children of color in D.K.'s classroom, Karlen suggested that "she would like to see other children of color in the classroom with her daughter."  However, no other students of color were in D.K.'s classroom at the start of the 1999 school year.  The Assistant Principal of the school commented that "because D.K.'s skin is so fair, we don't think of her as black," and that "we keep [minority children bussed in from Bridgeport] separate for obvious reasons."  Karlen's request to come to the classroom to read Maya Angelou poetry for Black History Month in February of 2000 was refused.  Karlen was told that the school would not be celebrating Black History Month; instead, African

_____

[2]All references to the "complaint" in this ruling refer to the Second Amended Complaint [Dkt. # 67].  Some undisputed facts, such as the names of schools and the grade levels of D.K. and J.K. while at those schools, are added for clarity and are taken from the parties' Rule 56 statements.  These facts are not material to the ruling on the motions to dismiss.

American history was being incorporated into the curriculum throughout the year.

Karlen expressed concern that D.K. could not read despite being in the second grade.  In response, she was met with hostility, and administrators "insinuated" that a dysfunctional home life could be a factor in D.K.'s inability to read.  Karlen paid to have an outside evaluation of D.K. done by a disabilities expert, who determined that D.K. was dyslexic.  Karlen requested a "PPT" (Parent and Placement Team) to evaluate D.K.  After a delay of at least one month and two PPTs, school evaluators determined that D.K. was not dyslexic and was not qualified for special services.  At the second PPT, Gilchrist suggested that it would be appropriate for a social worker to evaluate D.K.'s home life conditions to determine the source of D.K.'s difficulties.

During the 1999-2000 school year, after Karlen contacted and met with Westport's First Selectwoman to discuss what the Town was doing to promote racial diversity, Coleytown Elementary School administrators were "suddenly antagonistic" toward the plaintiffs.  When Karlen visited the school, janitors and other male personnel would follow her, staff members would openly stare and whisper, PTA members became hostile and treated her as if she were "invisible," and her children had difficulty getting playdates.

D.K. began the third grade at Coleytown in fall 2000.  Karlen learned that the only African American teacher at Coleytown had been encouraged to switch from teaching fourth grade to teaching third grade in order to "handle" Carla (and D.K.), but that teacher resigned shortly before the beginning of the 2000-2001 school year.  D.K. had conflicts with the new teacher (a non-party), and was physically harmed by different children throughout the year.  The teacher determined in each instance that the other children were not at fault.  D.K. developed anxiety and physical ailments throughout the year, for which the teacher ridiculed D.K. in front

of the class.  On one occasion after a school field trip, the class returned to school earlier than expected and D.K., who was sick, was placed on the school bus home, despite the school's prior instructions to Karlen to pick D.K. up at school after the trip.  Because the early arrival was not communicated to Karlen, D.K. arrived at the bus stop alone and had to walk home.

J.K. began preschool at Coleytown prior to fall 2001 and also experienced difficulties there.  Because of the difficulties her children were experiencing at Coleytown, Karlen contacted Landon and requested that they be transferred to another school.  Landon granted her request, and both children attended Long Lots Elementary school beginning with the 2001-2002 school year. D.K. was in fourth grade, and J.K. was in kindergarten.  D.K. was classified as a special needs child suffering from dyslexia and dysgraphia, and Long Lots administrators suggested that J.K. should be held back a year.  D.K. and J.K. were met with disdain and hostility at both Coleytown and Long Lots.

D.K. enrolled at the Phoenix Academy, a private school, from 2003-2005.  J.K. also enrolled (in third grade) at Phoenix Academy for the 2004-2005 school year, before both children returned to theWestport public school system for the 2005-2006 school year.  D.K. was beginning eighth grade at Bedford Middle School and J.K. was beginning fourth grade at Long Lots Elementary School.  Karlen discovered that J.K. was "hyperlexic," but a PPT commenced in January 2006 concluded that J.K. did not qualify for special services.  In the fall of 2006 (the beginning of J.K.'s fifth grade year), despite Karlen's request that J.K. be placed in a classroom where he knew some students, J.K. was placed in a classroom in which he knew no students. J.K. was disciplined more harshly than other students.

On one occasion during the summer of 2006, Karlen was stopped and questioned in a

school parking lot while attempting to pick up D.K. from a summer special education program.
During the 2006-2007 school year, school administrators sat in on parent-teacher conferences
with Karlen.  School administrators did not attend the parent-teacher conferences of other
parents.

In January 2007, D.K. was assaulted by another student and suffered a concussion, but the
other child was not disciplined.

The complaint alleges that Westport schools continually denied needed services to D.K.
and provided special education instruction that was insufficient to meet D.K.'s learning
disabilities.  In October 2007, Karlen discussed the special education needs of D.K. with
DiNapoli, principal at Staples High School, which D.K. began attending for her ninth grade year,
from 2007-2008.  DiNapoli then filed a police complaint against Karlen, claiming that Karlen
had threatened her.  DiNapoli directed Karlen that only written communications would be
accepted by the Westport Board of Education, referencing without evidence Karlen's alleged
abuse, threats, and issues.  Karlen was prohibited from calling or appearing at D.K.'s school,
though no other parents were subject to this treatment.  DiNapoli has also prevented Karlen from
having a "Behaviorist" (whom Karlen hired at her own expense) observe D.K. at school.

The complaint alleges that through all of the foregoing conduct, the defendants tolerated,
promoted and encouraged race discrimination in the educational environment, retaliated against
and chilled their speech, treated them differently than similarly situated individuals because of
their race and protected speech, and intended to inflict emotional distress.

## II.     Discussion

### A.     Dismissal for Lack of Subject Matter Jurisdiction

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1)[3]

when the district court lacks the statutory or constitutional power to adjudicate it.  Fed.R.Civ.P.

12(b)(1).  The party asserting subject matter jurisdiction has the burden of establishing by a

preponderance of the evidence that jurisdiction exists.  Malik v. Meissner, 82 F.3d 560, 562 (2d

Cir. 1996).  On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction,

the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of

the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing.  Zappia Middle E.

Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000); see also Morrison v.

National Australia Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008) (citing Makarova v. United

States, 201 F.3d 110, 113 (2d Cir. 2000)).  On consideration of a motion to dismiss for lack of

subject matter jurisdiction, the court accepts as true all material factual allegations in the

complaint, but no argumentative inferences are drawn in the plaintiff's favor.  Atl. Mut. Ins. Co.

v. Balfour MacLaine Int'l, 968 F.2d 196, 198 (2d Cir. 1992).  When a party moves to dismiss for

lack of subject matter jurisdiction in addition to other reasons, the court considers the Rule

12(b)(1) challenge first since if there is no subject matter jurisdiction, the additional defenses and

objections raised become moot and do not need to be determined.  Rhulen Agency, Inc. v.

Alabama Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990).

---

[3]Although the defendants have moved to dismiss under Rule 12(b)(6), not Rule 12(b)(1), their arguments include the argument that this Court lacks subject matter jurisdiction, and accordingly that argument is considered here under the standards appropriately applied to a Rule 12(b)(1) motion, including the Court's power to consider evidence outside the pleadings.

The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq.,

mandates federal grants to states to provide disabled children with a "free and appropriate public

education" in the least restrictive appropriate environment.  See 20 U.S.C. §§ 1400(d)(1)(A),

1401(8), 1411(a)(1) & 1412(a)(5)(A).  This statute's primary purpose is to ensure that all

children with disabilities receive a "free appropriate public education" which emphasizes special

education and related services designed to meet their unique needs and to assure that the rights of

children with disabilities and their parents or guardians are protected.  Mrs. M. v. Bridgeport Bd.

of Educ., 96 F.Supp.2d 124, 128 (D. Conn. 2000) (citing 20 U.S.C. § 1400(c)).

Claims that are founded on conduct mandated by IDEA may not be pursued before the

administrative remedies provided for in the statute have been exhausted.  Mrs. M., 96 F.Supp.2d

at 129.  IDEA's exhaustion provision provides, in relevant part, that

> Nothing in this title [20 USCS §§ 1400 et seq.] shall be construed to restrict or
> limit the rights, procedures, and remedies available under the Constitution, the
> Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973
> [29 USCS §§ 790 et seq.], or other Federal laws protecting the rights of children
> with disabilities, **except that before the filing of a civil action under such laws
> seeking relief that is also available under this part** [20 USCS §§ 1411 et seq.],
> **the procedures under subsections (f) and (g) shall be exhausted to the same
> extent as would be required had the action been brought under this part** [20
> USCS §§ 1411 et seq.].

20 U.S.C. § 1415(l) (emphasis added).  The procedures under subsections (f) and (g) require

plaintiffs with a complaint "with respect to any matter relating to the identification, evaluation, or

educational placement of the child, or the provision of a free appropriate public education to such

child," 20 U.S.C. § 1415(b)(6), to participate in a "due process hearing" to be conducted by the

State or local educational agency.  20 U.S.C. § 1415(f).  The decision and findings at the due

process hearing may be appealed to the State educational agency.  20 U.S.C. § 1415(g).

"IDEA's exhaustion requirement was intended to channel disputes related to the education of disabled children into an administrative process that could apply administrators' expertise in the area and promptly resolve grievances." Polera v. Bd. of Educ. of Newburgh Enlarged City School Dist., 288 F.3d 478, 487 (2d Cir. 2002).  The exhaustion requirement prevents courts from undermining the administrative process and permits an agency to bring its expertise to bear on a problem as well as to correct its own mistakes.  Id.  A request for money damages does not eliminate IDEA's exhaustion requirement.  Polera, 288 F.3d at 487-88.

The plaintiffs do not allege that they ever requested a due process hearing, or that IDEA's administrative remedy has been exhausted.  Rather, they argue that no exhaustion is necessary because they are not seeking relief under IDEA, nor do they allege any violation of IDEA as a basis for their claims.  However, the plaintiffs could have challenged several of the alleged acts in the complaint (those mandated under IDEA) using the IDEA-designated process, beginning with seeking administrative remedies.  Thus, "[t]o the extent the complaint could be construed to allege claims under the IDEA, even though such claims are disavowed by Plaintiff[s] or cloaked in legal theories distinct from IDEA," the claims are barred.  Distiso v. Town of Wolcott, No. 3:05cv1910 (PCD), 2006 WL 3355174 at *4 (D. Conn. Nov. 17, 2006).

This Court thus lacks subject matter jurisdiction to consider any claims seeking relief available under IDEA prior to the exhaustion of administrative remedies.  Accordingly, this Court lacks subject matter jurisdiction for any claims arising from the denial of educational services or environments or the provision of insufficient educational services to D.K. or J.K., irrespective of whether the alleged conduct was caused by racial discrimination or animus.  The Court also lacks subject matter jurisdiction over the allegations that the defendants failed to

-8-

adequately diagnose either child's ability level.  The motions to dismiss are granted as to these allegations.

However, a plaintiff choosing not to seek remedies pursuant to IDEA is not barred from nevertheless filing a suit in federal court seeking monetary damages for racial discrimination in violation of her equal protection and due process rights, so long as the claims are not "founded on conduct mandated by [] IDEA" and for which IDEA provides a remedy.  <u>Distiso</u>, 2006 WL 3355174 at *4.

Accordingly, the Court does have jurisdiction to consider claims based on conduct other than that required by IDEA, such as the claim of First Amendment retaliation against Karlen, equal protection or racial discrimination claims not implicating the diagnosis of the children's disabilities or the adequacy of the educational services provided to the children, racial discrimination claims based on allegations of deliberate indifference to the harassment by D.K.'s and J.K.'s classmates, and the state law claims under Connecticut's anti-bullying statute and for intentional infliction of emotional distress.  The defendants' motions to dismiss for failure to state a claim are considered as to these remaining claims.

### B.      Dismissal for Failure to State a Claim

When considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff.  <u>See</u> <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974), overruled on other grounds by <u>Davis v. Scherer</u>, 468 U.S. 183 (1984); <u>Grandon v. Merrill Lynch & Co., Inc.</u>, 147 F.3d 184, 188 (2d Cir.1998).  The complaint need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  <u>Swierkiewicz v. Sorema</u>, 534 U.S. 506,

-9-

512 (2002) (quoting Fed.R.Civ.P. 8(a)(2)).  Only a complaint that states a plausible claim for relief survives a motion to dismiss.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

**1.      Claims Barred by Statute of Limitations**

There is no statute of limitations contained in 42 U.S.C. § 1983.  Therefore, the court must apply the most appropriate state statute of limitations.  Wallace v. Town of Stratford Bd. of Educ., 674 F.Supp. 67, 70 (D.Conn. 1986) (citing Board of Regents v. Tomanio, 446 U.S. 478 (1980)).  As § 1983 claims are most appropriately characterized as personal injury actions, Wilson v. Garcia, 471 U.S. 261 (1985), Connecticut courts apply Connecticut's three-year statute of limitations for actions sounding in tort, Conn.Gen.Stat. § 52-577, to civil rights actions, including actions brought under Section 1983 and Title VI.  Carter v. Univ. of Connecticut, 264 Fed.Appx. 111 (2d Cir. 2008); cf. Curto v. Edmundson, 392 F.3d 502, 504 (2d Cir. 2004) (citing Morse v. Univ. of Vermont, 973 F.2d 122, 126 (2d Cir.1992) (acknowledging that "the federal trend [for claims brought under Title VI] is to look to the statute of limitations used in analogous federal discrimination actions such as those brought under 42 U.S.C. §§ 1981 and 1983")).

Kaye May was the principal of Coleytown Elementary School, which the minor plaintiffs attended until they were transferred to Long Lots Elementary School in 2001.  No communications with May or acts by May are alleged to have occurred after the children transferred out of Coleytown Elementary.  Accordingly, the claims against May are barred by the statute of limitations and the motion to dismiss is granted as to all claims against May.

The plaintiffs argue that the statute of limitations does not bar any of their claims because all the acts alleged to have occurred were part of a "continuing violation" of the plaintiffs' rights.

-10-

Under the continuing violation doctrine, "if a plaintiff has experienced a continuous practice and policy of discrimination, the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." Fitzgerald v. Henderson, 251 F.3d 345, 359 (2d Cir. 2001) (citations and internal quotation marks omitted). This argument lacks merit as to May, as the allegations against May are limited to the period before the children transferred to Phoenix Academy. However, at least as to the Westport Board of Education and as to Landon, the allegations of deliberate indifference plausibly could extend the period of limitations through the last act of discriminatory deliberate indifference. Accordingly, the three-year statute of limitations applies to all of the plaintiffs' claims against May, and bars those claims, but does not necessarily bar the claims against the other defendants. The Court will reconsider the continuing violation and statute of limitations arguments in the context of the motion for summary judgment as to the remaining defendants.

### 2.    Racial Discrimination Claims under § 1981 Dismissed

Section 1981 provides that all persons "shall have the same right in every State . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981. To survive a motion to dismiss, the complaint must allege a contractual relationship between the minor child and a defendant. Distiso v. Town of Wolcott, No. 3:05cv1910 (PCD), 2006 WL 3355174 at *7 (D. Conn. Nov. 17, 2006) (citing Domino's Pizza, Inc. v. McDonald, 546 U.S. 470 (2006)). As no such contractual allegation is alleged in the complaint, the motions to dismiss are granted as to the § 1981 claim.

### 3.    Title VI Claim as to Karlen Dismissed for Lack of Standing

42 U.S.C. § 2000d ("Title VI") provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  Id.  The defendants' receipt of Federal funding is required to state a claim under Title VI, and only the intended beneficiaries of the Federal funding (*e.g.* the school children in public school districts that receive federal funding) have standing to assert a Title VI claim.  Doe v. Woodbridge, No. 04-C8250, 2005 WL 910732 at *2 (N.D. Ill. 2005); Schuler v. Board of Educ. of the Central Islip Union Free Sch. Dist., No. 96-CV-4702, 2000 WL 134346 at *10 (E.D.N.Y. 2000).  Accordingly, the Title VI claim brought on behalf of Carla Karlen is dismissed as she has no standing to assert this claim.

### 4.    Title VI Claim Against Individual Defendants Dismissed

Although there is no consensus in this Circuit, it seems unlikely that a claim can be stated against an individual defendant sued in her official capacity for violation of Title VI, as the individual does not receive Federal funding.  See Peters v. Molloy College of Rockville Centre, No. 07-CV-2553 (DRH)(ETB), 2008 WL 2704920 at *7-8 (E.D.N.Y. July 8, 2008).  The Board of Education is the only defendant that could possibly be a program receiving federal funding, and the plaintiffs do not allege that any of the individual defendants receive federal funding.  Accordingly, the Title VI claims against the individual defendants fail to state a claim and are dismissed.[4]

---

[4]The complaint fails to allege that the Westport Board of Education receives federal funding, as is required for liability under Title VI; however, the defendants concede that it is likely the case that the Board receives federal funding.

**5.      IIED Claim against the Board of Education Abandoned**

The plaintiff concedes that no claim for intentional infliction of emotional distress is stated against the Board. Accordingly, the motion to dismiss is granted as to this claim, as to the defendant Board (count five).  See Conn. Gen. Stat. § 52-557n; O'Connor v. Board of Educ. of Town of Wethersfield, 90 Conn. App. 59, 877 A.2d 860 (App. Ct. 2005); Heigl v. Board of Educ., 218 Conn. 1, 3-4, 587 A.2d 423 (1991).

**6.      Connecticut's Bullying Statute - No Private Cause of Action**

Conn. Gen. Stat. § 10-222d, the "bullying statute," mandates that each regional district develop a policy to address the existence of bullying in its schools.  However, the plaintiffs concede that statute does not provide for a private cause of action.  Santoro v. Town of Hamden, No. CV040488483, 2006 WL 2536595 (Conn. Super. Ct. Aug. 18, 2006).  Accordingly, the motions to dismiss are granted as to this claim against all defendants.

**7.      Remaining Claims**

The remaining claims are:

(a)      Claims of racial discrimination under Title VI by the Board against D.K. and J.K.;

(b)      Claims of racial discrimination, in violation of the Equal Protection Clause and 42 U.S.C. § 1983, against all plaintiffs, by Landon, Gilchrist, DiNapoli, and the Board;

(c)      Claims of intentional infliction of emotional distress against Landon, Gilchrist and DiNapoli.

(d)      Claims of First Amendment retaliation against Carla Karlen by Landon, Gilchrist, DiNapoli and the Board.

-13-

The motions to dismiss are denied without prejudice as to these claims, and the arguments will be considered in the Court's ruling on the motion for summary judgment.  The Court will also address the issue of qualified immunity and whether a continuing violation allows the Court to consider evidence prior to February, 2004 against the remaining defendants in the ruling on the motion for summary judgment.

**III.    Conclusion**

For the foregoing reasons, the Motions to Dismiss [Dkt. # 18 and 68] are GRANTED with respect to all claims of insufficient special educational services for D.K. and J.K., which are foreclosed by the failure to exhaust administrative remedies required by IDEA;

GRANTED as to all claims against Kaye May; GRANTED as to all claims under 42 U.S.C. § 1981; GRANTED as to claims brought under Conn. Gen. Stat. § 10-222d (Count Four); GRANTED as to claims for intentional infliction of emotional distress against the Board of Education (Count Five); GRANTED as to any alleged violations of Title VI by individual defendants; GRANTED as to alleged violations of Title VI by the Board of Education which arise out of alleged discrimination against against Carla Karlen;

DENIED without prejudice as to the claims of Title VI racial discrimination against D.K. and J.K., by the Board of Education;

DENIED without prejudice as to the § 1983 (Equal Protection Clause) claims of racial discrimination by Landon, Gilchrist, DiNapoli and the Board against D.K., J.K., and Carla Karlen;

DENIED without prejudice as to claims of First Amendment Retaliation (Count Two); and

-14-

DENIED without prejudice as to the claim for intentional infliction of emotional distress against Landon, Gilchrist and DiNapoli.

So ordered this 29th day of July, 2009 at Hartford, Connecticut.

/s/ Christopher F. Droney
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**