UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CARLA KARLEN, CARLA KARLEN as next friend on behalf of minor children J.K. and D.K., Plaintiffs, | : : : : : | |
| v. | : : | 3:07-cv-309 (CFD) |
| WESTPORT BOARD OF EDUCATION, ELLIOTT LANDON, CYNTHIA GILCHRIST, KAYE MAY, LORRAINE DINAPOLI, Defendants. | : : : : : : | |

## RULING ON MOTION FOR SUMMARY JUDGMENT

**I.    Introduction**

The plaintiffs, Carla Karlen ("Karlen") and Karlen as next friend on behalf of her two minor children, J.K. and D.K., initially brought this lawsuit against the Town of Westport, Westport Superintendent of Schools Elliott Landon, Westport Director of Pupil Services Cynthia Gilchrist, and Kaye May, a school principal in Westport. The complaint was subsequently amended to substitute the Westport Board of Education for the Town of Westport, and to add as a defendant Lorraine DiNapoli, the Department Chair of Special Education at Staples High School in Westport.

The final amended complaint alleged, *inter alia*, racial discrimination under Title VI of the Civil Rights Act, violations of the Equal Protection Clause of the Fourteenth Amendment, First Amendment retaliation, and intentional infliction of emotional distress under Connecticut law. Kaye May was dismissed as a defendant by the Court on July 29, 2009. On September 30, 2010, the Court granted summary judgment in favor of the Board, Landon and Gilchrist.

DiNapoli, the only remaining defendant, then filed a motion for summary judgment on all remaining claims against her. That summary judgment motion is addressed in this opinion.

Karlen brings a claim against DiNapoli under 42 U.S.C. § 1983 alleging a violation of equal protection under the U.S. Constitution, and a claim for intentional infliction of emotional distress under Connecticut common law. Carla Karlen is the only plaintiff bringing these claims—not her children J.K. or D.K.

## II.     Background[1]

Carla Karlen and her two children are residents of Westport, Connecticut. D.K. and J.K. attend public school in the Westport Public Schools. J.K. is Carla Karlen's son; D.K. is her daughter. D.K. is four years older than her brother. Carla Karlen is African American and her husband Gerard Karlen (the father of D.K. and J.K.) is white. Lorraine DiNapoli was the Department Chair of Special Education at Staples High School during the years relevant to this litigation.

Karlen's claims are limited to the 2007–2008 school year, D.K.'s ninth grade year at Staples High School. During the first month or so of the school year, Karlen had no disputes with DiNapoli. Then, on October 17, 2007 an occupational therapist did an activity with D.K. that involved organizing the contents of her backpack. D.K. was upset because she felt the occupational therapist was "rifling through her things." DiNapoli and Karlen spoke on the phone about the activity after school hours. Karlen stated in her deposition that DiNapoli told her then that when D.K. was in school, the teachers and staff will handle situations as they deem

---

[1] The facts related herein are taken from the parties' Rule 56 statements, depositions, affidavits and supporting exhibits and are undisputed except where otherwise noted.

appropriate. The tone of the conversation escalated, and Karlen stated that she told DiNapoli, "if anyone were to deliberately and knowingly hurt her daughter, I [Karlen] would assume that they had some kind of death wish." DiNapoli stated that after the phone call, she spoke with the principal, John Dodig, about the situation, and he suggested she call the police and relay the incident. DiNapoli called the Westport Police and an officer interviewed Karlen. Following the interview, the investigation concluded as Karlen denied making a threat.[2]

On October 24, 2007, DiNapoli sent a letter to Karlen directing that all future communications with the school staff should be in writing, except in an emergency, in which case she should call her or Dodig. The next day, DiNapoli sent an identical letter to Mr. Karlen. DiNapoli had, in the past, limited means of communications with at least one other parent because of the nature of that parent's communications. Karlen claims that DiNapoli failed to respond to communications when they came from her alone, but admits that DiNapoli was always responsive when both Mr. and Mrs. Karlen sent her communications.

Karlen's equal protection claims against DiNapoli are that she filed a false police report against her concerning the October 17 telephone conversation, that she treated Karlen differently by requiring written communications, that she was unresponsive to her concerns, and had an "aggressive tone" with her. Her claims underlying her intentional infliction of emotional distress are similar, as discussed below.

DiNapoli now moves for summary judgment on those two remaining counts.

---

[2] Karlen does not deny she made the "death wish" statement, but argues that it was not a credible threat and DiNapoli's motivation in calling the police was to retaliate against her.

**III.    Applicable Law and Discussion**

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Eng'g Corp., 221 F.3d 293, 300 (2d Cir. 2000); Carlton v. Mystic Transp., Inc., 202 F.3d 129, 133 (2d Cir. 2000) (citing Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994)). Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton, 202 F.3d at 134. Consistent with this standard, all evidence favorable to the nonmoving party must be credited if a reasonable jury could credit it. Evidence favorable to the moving party, on the other hand, must be disregarded unless a reasonable jury would have to credit it because it comes from a disinterested source and is uncontradicted and unimpeached. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51 (2000). "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

4

A. **Equal Protection Claim**

A plaintiff alleging racial discrimination in violation of the Equal Protection Clause must show intentional discrimination rather than mere discriminatory effect. Washington v. Davis, 426 U.S. 229 (1976); Village of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 265 (1977) (discriminatory purpose must be at least a "motivating factor" in the decision, even if not the dominant or primary consideration); Alexander v. Sandoval, 532 U.S. 275, 285 (2001). An Equal Protection Clause claim requires the plaintiffs to establish that they were treated differently than others similarly situated, and that the differential treatment was motivated by an intent to discriminate on the basis of race. Diesel v. Town of Lewisboro, 232 F.3d 92, 103 (2d Cir. 2000).

Karlen has failed to establish both elements of this claim, even in the context of summary judgment. First, Karlen has failed to raise any genuine disputes of material fact regarding whether she was treated differently from others who were similarly situated. In identifying others similarly situated, the shared circumstances need not be identical, but the plaintiff must establish a "reasonably close resemblance of the facts and circumstances of the plaintiff's and comparator's cases." In this case, a sufficiently similarly situated comparator would be another parent who also made a threatening comment to DiNapoli. Karlen has not identified such a person. Karlen implies her husband Gerard Karlen is a comparator, and that he was treated differently because DiNapoli responded to his emails and letters directly, while DiNapoli did not directly respond to Mrs. Karlen. However, there is no evidence that Gerard Karlen ever made threatening comments to DiNapoli, therefore he is not similarly situated to his wife in this case. Even if he were similarly situated, there is no evidence DiNapoli failed to respond to Mrs.

Karlen's communications. Karlen has produced no evidence of any emails, letter, or calls to which she did not receive a response. Furthermore, DiNapoli has produced evidence that she did respond to Mrs. Karlen about her concerns. For example, on March 7, 2008, Karlen emailed Kim Palca, D.K.'s English teacher, and DiNapoli sent a response by letter on March 18. On May 21, 2008, Karlen emailed Superintendent Landon and Cynthia Gilchrest, director of Pupil Service for the district, about DiNapoli's use of Karlen's private email address. DiNapoli responded to Mrs. Karlen that same day. In addition, Gerard Karlen received the same directive from DiNapoli that he was to conduct any future communications with the school in writing. The contrast Karlen attempts to draw between the way DiNapoli treated her and the way DiNapoli treated Mr. Karlen is not supported by evidence. Karlen has also failed to produce evidence of any other sufficiently similarly situated parent who was treated differently.

Second, there are no material facts to establish that any differential treatment was motivated by an intent to discriminate on the basis of Mrs. Karlen's race. "[F]or an equal protection claim based on racial discrimination, the plaintiff must come forward with at least some credible evidence that the actions of [the defendant] were motivated by racial animus or ill-will." Resource Serv. LLC v. Bridgeport, 590 F. Supp. 2d 347, 353–54. (D. Conn. 2008) (internal citation omitted). Karlen's allegations of race discrimination are based on DiNapoli's "tone" and lack of eye contact at meetings about D.K.'s special education services. But, Mrs. Karlen conceded that DiNapoli's tone may have just been the result of mere frustration during their conversations. This evidence is insufficient to establish racial animus.[3] See, e.g., Nieves v.

---

[3] Karlen has claimed in her memorandum in opposition to this motion that DiNapoli's conduct "cannot be viewed in a piecemeal fashion, . . . it cannot be properly examined apart from the overall conduct of other Westport administrators . . . [DiNapoli] had been given [her]

Avalonbay Communities, Inc., No. 3:06CV198, 2007 WL 2422291 at *10 (D. Conn. Aug. 23, 2007) (holding that without more, an employer's tone and facial expressions is was not indicative of racial discrimination against his employee).

Because Karlen has failed to establish that she was treated differently than others similarly situated, and that the differential treatment was motivated by an intent to discriminate on the basis of her race, summary judgment is granted on the equal protection claim.[4]

### B. Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress under Connecticut law, a plaintiff must allege (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. DeLaurentis v. City of New Haven, 597 A.2d 807, 828 (Conn. 1991). Whether the defendants' conduct was extreme and outrageous is the initial question for the court to address. Edwards v.

---

marching orders." There is no evidence that DiNapoli was given "marching orders" to discriminate, or was influenced by others to discriminate against Karlen. Most of the claims against the other defendants in this case relate to J.K. and D.K.'s elementary and middle school years in Westport. DiNapoli worked only at the high school. Under 42 U.S.C. § 1983 the individual defendant's own intentional conduct must be examined, see Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994), and the evidence shows no intentional racial discrimination by DiNapoli.

[4] DiNapoli also argued as an alternative basis for summary judgment that she was entitled to qualified immunity on the § 1983 equal protection claim. As this Court ruled on September 30, 2010, DiNapoli is not entitled to qualified immunity because Karlen's right not to be subject to racial discrimination is clearly established. See Grey v. City of Norwalk Bd. of Educ., 304 F. Supp. 2d 314, 331 (D. Conn. 2004) (holding that plaintiff's "right to be free from discrimination because of her race was well-established," and noting the "long-established and well-known law on the subject").

New Opportunities Inc., No. 3:05CV1238, 2007 WL 947996, at *7 (D. Conn. Mar. 26, 2007). Only if reasonable minds could disagree does it become an issue for the jury to decide. Adams v. Hartford Courant & Tribune Co., No. 3:03CV0477, 2004 WL 1091728, at *4 (D. Conn. May 14, 2004).

Both federal and state courts in Connecticut have interpreted the qualification of "extreme and outrageous conduct" strictly. Golnik v. Amato, 299 F. Supp. 2d 8, 15–16 (D. Conn. 2003). Liability may only be imposed if the conduct "exceeds all bounds usually tolerated by decent society" and is "of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." Buster v. City of Wallingford, 557 F. Supp. 2d 294, 301 (D. Conn. 2008). The suffering must be "so severe that no reasonable person could be expected to endure it." Id. at 302. Additionally, "insults, verbal taunts, threats, indignities, annoyances, petty oppressions or conduct that displays bad manners or results in hurt feelings" do not reach the standard of offensive conduct. Buster, 557 F. Supp. 2d at 301–02 (citing Miner v. Town of Cheshire, 126 F. Supp. 2d 184, 195 (D. Conn. 2000)).

Even when drawing all inferences in favor of Karlen, DiNapoli's actions only rise at most to the level of "indignities," "annoyances," or "conduct that results in hurt feelings." Numerous decisions from Connecticut and this district have held that conduct far more egregious than DiNapoli's fails to meet the test for intentional infliction of emotional distress. See, e.g., Benton v. Simpson, 829 A.2d 68 (Conn. App. Ct. 2003); Dollard v. Board of Educ., 777 A.2d 714 (Conn. App. Ct. 2001). For these reasons, summary judgment is granted on this claim also.

8

**IV.     Conclusion**

For the reasons set forth above, the motion for summary judgment [Dkt. # 114] is GRANTED.  The Clerk is directed to close the case.

SO ORDERED  this 30th day of August 2011, at Hartford, Connecticut.


                              /s/ Christopher F. Droney
                              **CHRISTOPHER F. DRONEY**
                              **UNITED STATES DISTRICT JUDGE**